**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES E. MUSHERO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.   08-cv-136-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff James E. Mushero, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying plaintiff's applications for disability benefits and supplemental security benefits ("SSI") under Titles II and XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. [Dkt. # 7]. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

**Plaintiff's Background**

Plaintiff was born May 16, 1958. He was forty-nine years old at the time of the ALJ's final decision on June 28, 2007.[1] [R. 26, 767]. Plaintiff has a high school equivalency diploma (GED).

---

[1] Plaintiff's applications for disability insurance benefits and SSI were denied initially and upon reconsideration. [R. 6-8, 17-27, 44-48]. An initial hearing before Administrative Law Judge ("ALJ") Lantz McClain was held October 3, 2006, in Tulsa, Oklahoma. [R. 762-783]. The record was held open for additional medical records to be received and a supplemental hearing was held April 9, 2007. [R. 784-804]. By decision dated June 28, 2007, the ALJ found that plaintiff was not disabled at any time through the date of the decision. [R. 17-27]. On January 14, 2008, the Appeals Council denied review of the ALJ's findings. [R. 6-8]. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

[R. 103, 767]. Plaintiff also attended trade school in 1992 to learn to drive a semi-truck [R. 103] and worked as an over-the-road truck driver from December, 1992 until December 17, 2003. [R. 95-98, 110-112, 149-50]. Plaintiff's original applications claimed a disability onset date of October 1, 1999, which is the date he was first diagnosed as having acquired the human immunodeficiency virus ("HIV"). However, during plaintiff's October 3, 2006 administrative hearing before the ALJ, plaintiff agreed to amend his onset date to December 17, 2003, to be in alignment with the Social Security Administration's findings of substantial gainful activity ("SGA"), conceding he had been employed full-time up until that date. [R. 119, 768].

Prior to December, 1992, plaintiff reported his enlistment in the United States Army as employment. [R. 150]. Plaintiff was honorably discharged from the United States Army after thirteen years; his dates of service were April 18, 1978 to April 17, 1982, and February 9, 1983 to July 1, 1992.[2] [R. 84, 85]. At the October 3, 2006 hearing, plaintiff testified to working part-time at McDonald's and Dollar General after his alleged disability onset date [R. 768-70], but each job lasted less than two (2) months, and the ALJ determined both jobs to be below the level of SGA. [R. 768-70].

Plaintiff alleged his inability to work was due to "HIV and depression." [R. 100]. He testified at the October 3, 2006 hearing that he left both of his part-time jobs due to pain, fatigue, chronic nausea and his battle with diarrhea. [R. 768-70]. While his medical records reflect some

---

[2]   Defendant notes that plaintiff described himself as "retired from the military, a description at odds with his allegation of disability." [Dkt. # 17 at 6]. This statement is based on a misstatement by the ALJ that plaintiff was a long distance truck driver for the military. [R. 25]. The record reflects that plaintiff retired from the military in 1992, after serving in Desert Storm, and that after retiring from military service, he began driving a truck long distance. [R. 94-98, 101, 258, 723]. This misstatement of plaintiff's employment is harmless error.

bouts of nausea, vomiting, and occasional diarrhea (primarily as side effects of his HIV medications), there is no evidence of a persistent, chronic condition. Plaintiff's HIV medications were adjusted after reported periods of non-compliance with his anti-viral therapy and complaints of nausea and/or vomiting as bothersome side effects.[3] [R. 636, 638, 639]. After changing his anti-viral medication to a combination of Tenofovir, Didanosine, and Efavirenz, plaintiff reported he "tolerated the new regimen well with no apparent side effects." [R. 630, 682].

On March 15, 2004, plaintiff consulted Dr. Christine Pierce for an intake evaluation on referral from his primary care physician, Vinutha Kumar. Dr. Pierce noted plaintiff had been referred for stress and depression issues. Dr. Pierce's notes show plaintiff admitted that he lost his position as a truck driver due to his marijuana use. [R. 257-58]. Plaintiff complained of feeling depressed, angry and irritable, with body aches, fatigue, insomnia and decreased concentration. [R. 257]. Dr. Pierce noted plaintiff admitted having "passing suicidal ideations, but without a plan...." Id. Dr. Pierce made note of plaintiff's admissions of varied prior drug use, noting he still regularly smoked marijuana and tobacco and continued to drink alcohol. Dr. Pierce's notes show an initial treatment plan of a selective serotonin reuptake inhibitor ("SSRI"), and she noted plaintiff was not willing to stop using marijuana or alcohol. [R. 259].

---

[3] Plaintiff had been placed on a combination of several antiretroviral medications, termed Highly Active Antiretroviral Therapy ("HAART"), and his combination included combivir and atazanavir. [R. 638-39]. Combivir contains a combination of lamivudine and zidovudine. Lamivudine and zidovudine are antiviral medications. They are in a group of HIV medicines called reverse transcriptase inhibitors. This medication helps prevent the HIV virus from reproducing in the body. Drug Information Online, Drugs.com, http://www.drugs.com/combivir.html (last visited September 1, 2009). Atazanavir is an antiviral medication in a group of HIV medicines called protease (PRO-tee-ayz) inhibitors. Atazanavir prevents the HIV virus cells from multiplying. Drug Information Online, Drugs.com, http://www.drugs.com/mtm/atazanavir.html (last visited September 1, 2009).

At that initial visit, Dr. Pierce gave plaintiff an Axis rating of:

> **Axis I** - Mood Disorder NOS; r/o Major Depressive Disorder vs. Substance Abuse Induced Mood Disorder vs. Adjustment Disorder with Depressed Mood; Alcohol Dependence; Marijuana Dependence
> **Axis II** - Deferred
> **Axis III** - HIV+
> **Axis IV** - Financial stressors, recent job loss, limited support system
> **Axis V** - GAF 45

[R. 259, 516-17].  There is no other full Axis rating in Dr. Pierce's file notes.  Subsequent visits to Dr. Pierce by plaintiff show a GAF score that fluctuated between 55 and 60, and Dr. Pierce's notes show improvement in his mood and depressed state while taking Paxil. [R. 238, 252].  Plaintiff used his counseling time to "vent" about problems in his life, at one point telling Dr. Pierce not to increase his dosage of Paxil as his depression was "situational."  [R. 437-38, 496].  Dr. Pierce noted that she saw plaintiff once every two to three months to monitor his medication [R. 335], although she also provided additional services as her file notes show.  [R. 238, 252, 257-58, 421-22, 427, 437-38, 454, 487, 496].

On August 25, 2004, Maggie Miller, a disability examiner for the Social Security Administration, submitted a physical RFC form for plaintiff.  She gave plaintiff a light RFC, stating he could occasionally lift and/or carry (including upward pulling) 20 pounds, frequently lift and/or carry (including upward pulling) 10 pounds, stand and/or walk (with normal breaks) for a total of six hours in an eight hour work day, sit (with normal breaks) for a total of six hours in an eight hour work day, and "unlimited" push and/or pull "other than as shown for lift and/or carry" (including the operation of hand and/or foot controls).  There is a note stating lifting is limited to "light" in consideration of plaintiff's allegations of fatigue. [R. 358].  Dr. Miller listed no postural limitations,

no manipulative limitations, no visual limitations, and no communicative or environmental limitations. [R. 359-361]. There is no other physical RFC in plaintiff's record, and the ALJ ultimately determined plaintiff to have a lower RFC than Dr. Miller, rating plaintiff as able to do sedentary work without any limitations on reaching noted. There are no medical records limiting plaintiff's ability to reach or use his upper extremities.

On August 24, 2004, Martin M. Isenberg, Ph.D. evaluated plaintiff's mental abilities using a Psychiatric Review Technique form. [R. 343-356]. Dr. Isenberg found plaintiff did not have a severe mental impairment. Dr. Isenberg stated he considered category 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders) and found plaintiff was diagnosed with a mood disorder, but that he was not severely impaired by it. He found plaintiff to have no restrictions of Activities of Daily Living ("ADL"), mild difficulties maintaining social functioning and maintaining concentration, persistence or pace, and found no episodes of decompensation. He opined, "[t]here is not a greater than nonsevere psychological impairment at the present time. The claimant does receive treatment for a mood disorder. The MER does not describe him as severely symptomatic. His current ADLs appear to be unrestricted by psychological factors." [R. 343-356].

In assessing plaintiff's qualifications for disability benefits and SSI, the ALJ determined at step one that plaintiff met the insured status requirements of the Act through December 31, 2009 and that he had not been engaged in substantial gainful activity since December 17, 2003. [R. 21].

At step two, the ALJ found that plaintiff had the severe impairments of HIV infection, early degenerative disk disease of the lumbar spine with mild scoliosis, degenerative disk disease of the cervical spine without herniation, and asymptomatic bilateral inguinal hernias. [R. 21]. The ALJ

found plaintiff to have a history of hyperlipidemia, which he found was not severe.[4] The ALJ also found the plaintiff to have a history of substance abuse and found him to be using alcohol, marijuana, and tobacco, but he found that this abuse did not result in significant work-related limitations. [R. 21]. Although plaintiff stated that he has experienced depression since 1992, the record shows that he was able to work despite his symptoms. The ALJ therefore found plaintiff's depression to be non-severe within the meaning of the regulations, stating that plaintiff had been prescribed Paroxetine (Paxil) for his symptoms, and that the record reflects plaintiff's symptoms have not significantly interfered with his daily activities including working part-time and caring for his grandchildren. The ALJ addressed plaintiff's complaints of diarrhea and bowel incontinence and found that these problems had not lasted twelve consecutive months. [R. 21]. At step three, the ALJ found that plaintiff's impairments did not meet the requirements of any Listing. [R. 25]. The ALJ found plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work as follows:

> claimant has the residual functional capacity to occasionally lift and/or carry 10 pounds and frequently lift and/or carry up to 10 pounds; stand and/or walk for at least 2 hours out of an 8-hour workday (with normal breaks); sit at least 6 hours out of an 8-hour workday (with normal breaks); and must avoid exposure to infections.

[R. 22]. The ALJ found transferability of job skills was not material to the determination of disability. [R. 26]. At step four, the ALJ determined that plaintiff could not return to his past relevant work as either a soldier or a truck driver, as he was required to lift at least 50 pounds and stand at least six (6) hours of an eight (8) hour workday. [R. 25-26]. At step five, the ALJ

---

[4]   Hyperlipidemia is defined as the presence of excess fat or lipids in the blood. "Hyperlipidemia." Merriam-Webster's Medical Dictionary. Merriam-Webster, Inc. August 20, 2009. <Dictionary.com http://dictionary.reference.com/browse/Hyperlipidemia>.

considered plaintiff's age, educational background, work experience, RFC, and the Medical-Vocational Guidelines ("Grids"), and found there were other jobs, such as order clerk and assembler, that existed in significant numbers in the national and regional economies which plaintiff could perform. [R. 26-27]. The ALJ concluded that plaintiff was not disabled under the Act from December 17, 2003, through the date of the decision. [R. 27].

## Issues Raised

On appeal, plaintiff alleges three errors. First, plaintiff argues that the ALJ failed to perform a proper analysis at step five of the sequential evaluation process by failing to include any limitation for plaintiff's depression in the hypothetical to the vocational expert or in his RFC assessment. [Dkt. # 16 at 2-3]. Plaintiff also argues the ALJ failed at step five by improperly ignoring testimony from the vocational expert. [Dkt. # 16 at 3]. Second, plaintiff alleges the ALJ failed to give proper weight to plaintiff's "treating physician psychiatrist," Dr. Christine Pierce. Third, plaintiff argues the ALJ failed to perform a proper credibility determination. [Dkt. # 16 at 5-6].

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. 404.1512(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to

evaluate a disability claim. 20 C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record taken as a whole, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff first argues the ALJ failed to perform a proper step five analysis of the sequential evaluation process, specifically that he committed reversible error by failing to include any limitations for plaintiff's depression in his hypothetical to the vocational expert or in his RFC assessment, and by improperly ignoring testimony from the vocational expert. [Dkt. # 16 at 2-3]. The Court disagrees.

The ALJ did consider plaintiff's depression, finding:

[Plaintiff] has stated that he has experienced depression since 1992, but the record shows he was able to work despite his symptoms. The claimant has been prescribed Paroxetine (Paxil) for his symptoms, but the record reflects that the claimant's symptoms have not significantly interfered with his daily activities including working part time and caring for his grandchildren. Therefore, the undersigned finds that the claimant's depression is not severe within the meaning of the regulations.

[R. 21]. The ALJ also noted:

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

[R. 23]. The plaintiff directs the Court's attention to two reports from his treating psychiatrist, Dr. Christine Pierce, as proof of his mental disability: (1) Assessment of Claimant's Ability to do Work-Related Activities (Mental); and (2) Medical Opinion to Medical Listing 12.04. [R. 335-342]. The ALJ addressed both reports in his determination of plaintiff's RFC and found the reports to be both internally inconsistent and inconsistent with Dr. Pierce's own treatment notes. [R. 24]. An example given by the ALJ of these internal inconsistencies is the fact that the two reports, each completed on March 4, 2005, show different rated levels of difficulty in social functioning. In the Assessment of Claimant's Ability to do Work-Related Activities (Mental), Dr. Pierce rates plaintiff as having "moderate" difficulties in his functional limitations of maintaining social functioning, concentration, persistence or pace, and episodes of decompensation, each of extended duration. [R. 336]. She rated him "mild" in "Restriction of Daily Living" overall. [R. 336]. In the Medical Listing 12.04, however, Dr. Pierce rates plaintiff as having "marked" difficulties in these same functional limitations. [R. 342]. Marked difficulties are characterized by abilities to function in this area being seriously limited, but not precluded; whereas, moderate difficulties are characterized by abilities to

function in this area being limited, but satisfactory. [R. 335]. In addition, in the Medical Listing 12.04, Dr. Pierce noted plaintiff had a "current history of 1 or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement." [R. 342]. This statement is not only inconsistent with Dr. Pierce's records, there is no supporting evidence for it in the record.

In Dr. Pierce's March 4, 2005 report, she indicates that plaintiff had experienced "episodes of decompensation, each of extended duration" [R. 336]; however, nothing in her treatment notes is indicative of "episodes of decompensation." Rather, plaintiff's depression improved while taking the SSRI Paxil. Plaintiff reported to Dr. Pierce that he could "tell if [he] missed a dose." [R. 496]. Plaintiff was seen again by Dr. Pierce on April 8, 2005, and Dr. Pierce reported that plaintiff was "smiling, pleasant and animated." Plaintiff stated he was "sleeping like a baby," and he denied a depressed mood although he continued to admit to using marijuana regularly and rationalized his use by stating that it increased his appetite. [R. 421-22].

As to plaintiff's argument that the ALJ erred at step five by ignoring "unfavorable answers" from the vocational expert with regard to the effect a reaching limitation and good manual dexterity would have on available jobs which plaintiff could perform, [Dkt. # 16 at 3], Plaintiff relies on testimony elicited from the vocational expert based on a hypothetical question posed to the vocational expert that was not supported by facts accepted as true by the ALJ. Specifically, after the October 3, 2006 hearing, the ALJ held a supplemental hearing on April 9, 2007, in which he enlisted the assistance of a medical expert, in addition to the assistance of the vocational expert. The medical expert reviewed plaintiff's file and found plaintiff to have the following RFC:

I would say must be sedentary. I think the six hours out of an eight hour period,

-10-

> stand and walk two hours.  And lift and carry a maximum of ten pounds and the bending, stooping, crawling, those are the occasional and I think one more thing I would add is he should kind of avoid any exposure for any kind of infections ...

[R. 790].  The ALJ, in his hypothetical to the vocational expert, adopted the RFC from the medical expert, except he left out reference to the occasional bending, stooping, and crawling, even though the medical expert said these activities could be performed on an "occasional" basis.  Thus, the RFC given to the vocational expert at the hearing was:

> ... say an individual with the same age, education and vocational history as this claimant is going to be sedentary work but can occasionally lift or carry ten pounds frequent, carry up to ten pounds, stand or walk for at least two hours out of an eight hour work day and would go breaks steadily six hours out of an eight hour work day with normal breaks.  Plus avoid exposure to infections.

[R. 800].[5]

Despite the RFC, plaintiff's attorney asked the vocational expert questions regarding bilateral, manual dexterity and showed the vocational expert an exhibit that assumed severe depression as rated by listing 12.04, which is not part of the RFC.  Therefore, plaintiff's hypothetical was not supported by substantial medical evidence, since the ALJ was bound only to consider the testimony that was based on supported findings.  See Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990).  The vocational expert testified that, based on the hypothetical given by the ALJ and adopted from the medical expert, there were jobs available in both the national and regional economies that plaintiff had the ability to perform.  [R. 800-801].  The ALJ properly disregarded the vocational expert's answer to this hypothetical.  The ALJ is not bound to consider responses to hypothetical questions posed to the vocational expert that included limitations not borne out by the record.  See

---

[5]  Therefore, the ALJ not only relied on testimony from the medical expert, but he incorporated the medical expert's RFC into his hypothetical to the vocational expert.

Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Therefore, the testimony regarding the unsupported hypothetical question was not binding on the ALJ. See Talley, 908 F.2d at 588.

Plaintiff next argues the ALJ failed to perform a proper analysis of Dr. Pierce's (the treating psychiatrist) opinion, and did not giving proper weight to Dr. Pierce's opinion. The Court disagrees. According to Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004), the ALJ is required to give controlling weight to the opinion of a treating physician, if it is supported by medically acceptable clinical and laboratory diagnostic techniques, but is not inconsistent with other substantial evidence in the record. However, if either of these requirements are not met, the ALJ is not required to give the opinion controlling weight and it may, in fact, be error for the ALJ to do so. See Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

The ALJ found that Dr. Pierce's opinions conflict with her own file notes and other evidence in the record which state that plaintiff was able to function "appropriately in most settings." [R. 181-82, 491]. For example, on August 18, 2004, Dr. Pierce increased plaintiff's Paxil dosage to 30 mg per day and discussed with him how his alcohol consumption was contributing to his depressed mood. [R. 487]. Dr. Pierce's notes indicate that plaintiff reported no depressed mood, that he was sleeping well and acting happy. [R. 252, 421-22]. The ALJ noted Dr. Pierce's records did not show any episode of decompensation that was of extended duration and that plaintiff had worked part time and looked for work after his alleged onset of disability. [R. 25].

Plaintiff argues the ALJ failed to apply the Goatcher factors to Dr. Pierce's opinion. The Court again disagrees. The Goatcher factors include:

> (1) the length of treatment, the treatment relationship, and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree

> by which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) the specialty of the author of the opinion; and (6) any other factors noted by the ALJ which support or detract from the opinion.

Goatcher v. U.S. Dep't. Of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995). The ALJ did discuss each of these factors in his review of Dr. Pierce's opinion: (1) he noted Dr. Pierce visited with the plaintiff every two to three months and that she was a psychiatrist with the Veterans' Administration; (2) he summarized plaintiff's visits with Dr. Pierce and mentioned the prescribed therapy, including therapy such as a support group and smoking cessation, in which plaintiff did not elect to participate; (3) he discussed Dr. Pierce's opinions and noted that they were in direct conflict with her own notes as well as with substantial evidence in the record; (4) he noted at the beginning of his discussion that Dr. Pierce was a psychiatrist; and (5) he laid out references to the record that are in direct conflict with Dr. Pierce's opinion. [R. 24-25]. Thus, the ALJ did not err in affording Dr. Pierce's opinions "very little weight." [R. 25].

Plaintiff also contends the ALJ improperly ignored the opinions of the non-treating, non-examining reviewing experts of the Social Security Administration. [Dkt. # 16 at 5]. Each of the state examiners, as detailed above, gave plaintiff a higher RFC rating than the ALJ ultimately assigned to plaintiff. Dr. Miller added in her notes that plaintiff alleges HIV symptoms that restrict his ability to work. She determined plaintiff to have a light RFC that would restrict his past work, but with his medical/vocational profile, she opined "claimant should be able to return to other work without the range of jobs available to him being significantly reduced." [R. 365]. Since the medical evidence did not conflict with the ALJ's RFC determination, the burden to expressly discuss such evidence is minimized. See Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004). The Court finds the ALJ was not in error.

Finally, plaintiff argues that the ALJ failed to perform a proper credibility determination. The ALJ noted plaintiff's inconsistent statements regarding substance abuse lessened his credibility, as well as the fact that he was able to care for his young grandchildren despite his stated problems. [R. 25]. The ALJ noted that plaintiff had seen nurse practitioner Janet Gearin and psychiatrist Naveen Kumar in the pursuit of mental health treatment for symptoms of sadness, worthlessness, and anger on October 4, 2006. The record shows plaintiff was not completely honest with intake examiner Janet Gearin, stating he admitted "some experimentation with marijuana," but none in many years, that he did not use alcohol, but enjoyed a social drink, and was never an alcoholic. [R. 25, 722]. During plaintiff's visit to Dr. Kumar on October 12, 2006, plaintiff admitted drinking alcohol and using marijuana, although he claimed the last time he smoked marijuana was "two to three months ago." [R. 719]. Plaintiff's previous medical records document that plaintiff continually smoked marijuana and tobacco with no desire to stop even after being counseled to do so by Dr. Pierce, other mental health physicians, and his primary care doctors. [R. 245-46, 252, 259, 267, 421-22, 454, 487, 496, 641-42].

On October 24, 2006, Ms. Gearin reported plaintiff's depression "seem[ed] to be a bit more stable now that pt is on meds." [R. 699]. On March 21, 2007, Ms. Gearin noted that plaintiff had called in and informed her he had increased his Paxil dosage on his own to 80 mg per day and was "feeling better." Ms. Gearin informed Dr. Kumar who, in turn, noted in plaintiff's file that 50 mg per day was the maximum dosage of Paxil, and he was not to exceed that amount. Ms. Gearin informed plaintiff of that fact. [R. 752].

Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just

a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished).[6] The evidence relied upon by the ALJ clearly shows that plaintiff's testimony was contradictory and that he was not following the prescribed treatment of his treating physicians. The Tenth Circuit has held that a plaintiff's failure to follow a doctor's instructions is a factor in determining credibility. Sims v. Apfel, 172 F.3d 879 (10th Cir. 1999) (unpublished). Plaintiff fails to cite to any medical evidence which contradicts the ALJ's assessment of plaintiff's credibility. Plaintiff's arguments are merely conclusory. Thus, the Court finds that the ALJ's determination of plaintiff's credibility is supported by substantial evidence.

## Conclusion

Based on the foregoing, the Court **AFFIRMS** the decision of the Commissioner denying disability benefits to plaintiff.

IT IS SO ORDERED this 25th day of September, 2009.

_____
T. Lane Wilson
United States Magistrate Judge

---

[6] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1:  10th Cir. R. 32.1.